THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* RONALD STOKES, Defendant-Appellant.

First District (2nd Division)    No. 80-62

Opinion filed March 17, 1981.—Modified on denial of rehearing  April 28, 1981.

Ralph Ruebner and Susan Kaplan, both of State Appellate Defender's Office, of Chicago, for appellant.

Richard M. Daley, State's Attorney, of Chicago (Marcia B. Orr, James S. Veldman, and Warren A. Zimmerman, Assistant State's Attorneys, of counsel), for the People.

Mr. JUSTICE DOWNING delivered the opinion of the court:

Following a jury trial defendant Ronald Stokes was convicted of attempt murder (Ill. Rev. Stat. 1977, ch. 38, pars. 8—4, 9—1), aggravated battery (Ill. Rev. Stat. 1977, ch. 38, par. 12—4), and armed violence (Ill. Rev. Stat. 1977, ch. 38, par. 33A—2). The trial court sentenced defendant to concurrent terms of 6 years for armed violence and attempt murder. No sentence was entered on the aggravated battery verdict, as the court held that it was a lesser included offense of attempt murder.

Defendant asks this court to consider whether (1) the trial court improperly admitted the testimony of a policeman as to the path of the bullet which struck the victim; (2) the evidence failed to prove defendant guilty beyond a reasonable doubt of the crimes; (3) the trial court denied defendant a fair trial and otherwise erred in tendering certain instructions to the jury; (4) defendant was denied effective assistance of counsel; and (5) the conviction and sentence for attempt murder must be vacated.

On November 8, 1978, Robert Lustro was shot in the left arm as he was leaving his job at Oakland School, located at 740 E. 40th Street,

Chicago. Lustro testified that he was employed there by the Chicago Board of Education (CBE) as an engineer custodian, a supervisory position.

Defendant was employed at that time by CBE as a custodial worker at Oakland School. Lustro was required to rate the performance of his workers, including defendant. Lustro's rating of defendant for October 1978 was low. On October 30, 1978, defendant came to see Lustro about the rating. Lustro related that defendant told him that "he would like to take [Lustro] outside." Lustro declined and told defendant to leave his office.

The witness further stated that on November 1, 1978, defendant's union representative and defendant called upon him to discuss the rating. During the discussion, defendant, with a putty knife in his hand, got close to the witness; however, the union representative intervened.

On November 8, at about 3:30 p.m., Lustro was leaving the school after work, in the company of John Czerechowicz. His car was parked across the street from the school's main entrance. After he approached his car, Lustro felt a sharp pain in his left elbow and heard a "dull crack." He looked about and saw smoke in front of the school building in the vicinity of room 108. He also smelled something like gunpowder. Lustro then realized he had been shot. Czerechowicz, meanwhile, dove into his car and soon thereafter drove away. Lustro did not see anyone in the school windows. He drove to a hospital and reported the incident to the police. To Lustro's knowledge, defendant and James Robinson were the only two people in the school building at the time of the shooting. Lustro admitted that the main door of the building was not locked or otherwise secured before 7:30 p.m. daily.

John Czerechowicz testified that he was employed by CBE as an electric repairman. On November 8, he went to Oakland School to work on the alarm system. He knocked on the main door of the school and soon thereafter was allowed in. He met with Lustro and later accompanied the latter outside of the building. The witness was going to get a tool from his car. As he was opening his door, the witness heard a "sharp crack" and then a "thud" behind him in the vicinity of Lustro's car. He smelled gunpowder. He dove into his car, and then looked around. Czerechowicz did not see anyone besides Lustro. When he saw that Lustro appeared to be all right, he drove away.

The witness related that he had been familiar with guns for 30 years and often fired them at a police range. He believed that the weapon fired on that date was a small caliber gun.

Michael Stimage testified that he was a high school student who worked for defendant at the Oakland School. On November 8, he went to the first floor of the school and began cleaning. He went to room 108 with

defendant. The latter told Stimage to go to room 104. Stimage emptied the trash cans in 108, then did as directed. While in 104, Stimage heard a "pop sound" like a firecracker. He looked into the hallway, but saw nothing. Room 108 was directly across the hall from 104. Stimage was unaware of anyone else being on the first floor at that time besides himself and defendant. He did not see defendant carry a gun or use a gun on that day.

James Robinson related that he was a janitor at Oakland School. He was unsure of who was in the school building at the time in question. He was working on the second floor and did not hear anything unusual.

Joseph Murphy, a Chicago police officer, testified he was assigned to investigate a shooting at the Oakland School on November 8, 1978. He interviewed Lustro at the hospital. He noticed that the gunshot wound appeared to follow a downward course in Lustro's left arm. Murphy then drove to the school at about 6:30 p.m. Robinson let him into the building. Murphy went to room 108. There he saw a broken window with a piece of plexiglass in front of the hole. Murphy removed the plexiglass and lined up a hypothetical gunshot from the hole. It ran a direct line to where the victim told Murphy that he was standing when shot.

On November 13, Murphy returned to the school accompanied by Lustro and Czerechowicz. He asked them to reenact the events of November 8. The officer concluded that the shooting had occurred from room 108. Murphy related that the hole in the window was not new. He also admitted that the area around the school was a high crime district.

Defendant testified he was employed by CBE. In 1978, he was assigned to Oakland School. On November 1, defendant had a meeting with his union supervisor and Lustro concerning a transfer to another school. He did not threaten Lustro at any time. He had no further discussions on the rating, nor did he threaten Lustro between that date and November 8.

On the afternoon of November 8, he was at the school cleaning classrooms on the first floor, including room 108. Nothing unusual happened during his work. He did not learn that Lustro had been shot until the next day. He denied shooting Lustro.

On cross-examination, defendant denied arguing about the rating with Lustro at the end of October. He had received bad ratings before and they did not bother him. Defendant stated that he did not wield a putty knife against Lustro. He related that unauthorized people were allowed into the building at times, including neighborhood boys desiring to play basketball; that the doors of the school were not locked until 7:30 p.m.; and anyone could walk into the building before that time. He was unaware of who was in the school that afternoon. Defendant also stated that room 108 and room 104 are not on the same hallway. On November

8, defendant did not hear a gunshot, firecracker sound, or anything unusual.

The defense rested at this point, and the jury returned verdicts of guilty for all three crimes.

## I

Defendant initially argues that Officer Murphy was not qualified as an expert witness, and that his testimony regarding the path of the bullet and its origin was thus erroneously admitted into evidence.

It is clear from the record that Officer Murphy, a homicide investigator for the Chicago Police Department with about 10 years experience, was not presented or qualified as an expert witness in ballistics when called to testify by the State. Rather, Murphy was questioned as a lay witness regarding observations he personally made in investigating the shooting of Robert Lustro. On direct examination, without objection, Murphy related that he examined Lustro's wound at the hospital and found that it entered from an upward projection going down into his arm. Murphy went to the Oakland School, entered room 108, and found a broken window with a hole of about 8 to 10 inches. Murphy placed his hand through the hole and observed the existence of a direct line to the spot where Lustro stated he was standing when shot. Several days later, Murphy went to the scene with the victim and his companion and they reenacted the shooting incident. From room 108, Murphy again put his hand through the window hole. He concluded that the shooting occurred from that room. Cross-examination reaffirmed these observations.

■■ ■ As a general rule, a lay witness cannot give an opinion or draw inferences from the facts. He may, however, express an opinion based upon his observations where it is difficult to reproduce for the jury the totality of the conditions perceived and where the opinion given is one that persons in general are capable of making and understanding. (*People v. Williams* (1978), 62 Ill. App. 3d 966, 972-73, 379 N.E.2d 1268; *People v. Burton* (1972), 6 Ill. App. 3d 879, 886, 286 N.E.2d 792, *appeal denied* (1972), 52 Ill. 2d 598, *cert. denied* (1973), 411 U.S. 937.) We believe that Officer Murphy's testimony comes within the exception laid out in *Williams* and *Burton*. His opinion as to the general trajectory of the shot which hit Lustro and as to the point of origin of the gunfire was clearly based upon his observations of the scene of the crime, which could not be reproduced for the jury. In our opinion, any person could relate such observations under similar circumstances. Therefore, Murphy's qualifications as an expert, or lack thereof, are not relevant to the admissibility of his statements. Although defendant strongly urges that only a ballistics expert has the ability to render such opinions, we are inclined to believe that these matters are within the realm of perception of which the average

man is capable. Thus, we perceive no error in the trial court's unchallenged admission of Officer Murphy's testimony into evidence.

## II

Defendant next urges that he was not proved guilty beyond a reasonable doubt. The evidence upon which defendant's conviction was based was entirely circumstantial. No one saw defendant fire a gun in the direction of the victim. To warrant conviction of a crime based on circumstantial evidence, the proof must be of a conclusive nature, leading on the whole to a satisfactory conclusion and producing a reasonable and moral certainty that the defendant, and no one else, committed the crime. Every reasonable hypothesis of the defendant's innocence which finds a basis in the evidence or lack thereof must be excluded in order to render a conviction. (*People v. Howard* (1979), 74 Ill. App. 3d 870, 875, 393 N.E.2d 1084.) A jury's verdict will be reversed only where there is a reasonable doubt as to the defendant's guilt, and the verdict is palpably contrary to the weight of the evidence. *People v. Daniels* (1978), 67 Ill. App. 3d 663, 671, 384 N.E.2d 932.

Our careful consideration of the evidence presented at trial leads us to conclude there is no reason to disturb the jury's determination. The evidence sufficiently disposes of the only reasonable hypothesis of defendant's innocence, which is that some unknown individual entered the school and fired the shot at Lustro. We have reviewed the authority cited by defendant in support of his contention and find it to be inapplicable to the circumstances of this case. We believe that based on this record the jury properly found the defendant guilty beyond a reasonable doubt.

## III

Defendant contends that reversible error was committed at trial in regard to the instructions given to the jury.

## A

■■ Defendant first asserts that the trial court erred in giving the jury a guilty verdict form for each of the three crimes of which he was accused, but only one not guilty form covering all three charges. He argues that this circumstance denied the jury the opportunity to find defendant not guilty of some but less than all of the charges.

The same contention was raised in *People v. Cole* (1977), 50 Ill. App. 3d 133, 147, 365 N.E.2d 133, *appeal denied* (1977), 66 Ill. 2d 632, *cert. denied* (1978), 435 U.S. 944, 55 L. Ed. 2d 541, 98 S. Ct. 1526. There, the court noted that the effect of a jury's return of an unsigned guilty verdict form is by law a verdict of not guilty on the charge contained therein.

Therefore, under the verdict forms given, the jury was not limited to finding either total acquittal of the defendant or else total conviction of him; it could only convict the defendant of a specified offense by signing the guilty form related to that charge. This holding has recently been approved by this court. See *People v. Brown* (1980) 87 Ill. App. 3d 368, 372-73, 409 N.E.2d 81.

We find these decisions to be dispositive of this issue. There is no merit to defendant's assertion that the trial court's presentation of IPI Criminal No. 26.01[1] to the jury makes the present facts distinguishable from those of *Cole* and *Brown*. Therefore, the absence of individualized not-guilty verdict forms was of no prejudice to defendant and forms no basis for reversal of the result below.

### B

Defendant claims that the instructions which concerned the offense of attempt murder misled the jury into believing that defendant could be guilty of that crime without having the requisite intent to kill.

In *People v. Morano* (1979), 69 Ill. App. 3d 580, 584-86, 387 N.E.2d 816, *appeal denied* (1979), 79 Ill. 2d 616, the trial court had given the identical instructions which are attacked here by defendant. In *Morano*, this court rejected the same contention. We adhere to *Morano* in this case.

### C

Defendant claims that since this case was entirely based upon circumstantial evidence, the trial court erred in failing to give the jury the second paragraph of IPI Criminal No. 3.02: "You should not find the defendant guilty unless the facts and circumstances proved exclude every reasonable theory of innocence."

The comments to this instruction indicate that the second paragraph should be given only when proof at trial is entirely circumstantial. Circumstantial evidence is proof of facts and circumstances from which the trier of fact may infer other connected facts which reasonably and usually follow according to common experience. Direct evidence is proof of a fact without the necessity of inference or presumption, or evidence of a fact perceived by means of a witness' senses. (*People v. Cox* (1979), 71 Ill. App. 3d 850, 860, 389 N.E.2d 1238.) Distinguishing between the two types of evidence can be difficult. Thus, courts of review are reluctant to

---

[1] IPI Criminal No. 26.01, as modified and given by the trial court, so far as pertinent, reads as follows:

"° ° °

Your agreement upon the verdict must be unanimous. Your verdicts must be in writing and signed by all of you, including your foreman or forelady.

° ° °

You will be provided with four (4) forms of verdicts. When you have unanimously agreed upon your verdicts you will select the form which reflects your verdicts and sign it as I have stated."

find reversible error in the trial court's failure to give the second paragraph of instruction No. 3.02, and will do so only if justice has been denied or the verdict has resulted from such error. *People v. Hammers* (1976), 35 Ill. App. 3d 498, 507, 341 N.E.2d 471, *appeal denied* (1976), 63 Ill. 2d 553, *cert. denied* (1976), 429 U.S. 1002, 50 L. Ed. 2d 614, 97 S. Ct. 534.

■■ Defendant argues that the jury should have been told, via the omitted second paragraph, of its responsibility to acquit him if every reasonable hypothesis of innocence was not excluded. We agree that under the circumstances the trial court should have tendered the entire instruction, including the omitted paragraph, to the jury. However, our review of the record convinces us that submission of the entire instruction would not have altered the jury's determination. (See part II.) Therefore, we find no cause to reverse defendant's convictions based upon the trial court's omission.

## IV

Defendant asserts that he was denied the effective assistance of counsel at trial because of his attorney's manner of conducting the defense, especially his failure to tender any instructions or to object to those given, and his failure to object to the testimony of policeman Murphy.

For privately retained counsel, a strict test is applied to such an allegation. A conviction will not be reversed unless the defendant's representation is of such a low caliber that it amounts to no representation at all, or reduces the court proceeding to a farce or sham. *People v. Murphy* (1978), 72 Ill. 2d 421, 436, 381 N.E.2d 677.

We have found no reversible error in the instruction given to the jury. Defendant therefore has no basis for complaining about the actions of his trial counsel on this matter.

■■ With regard to the testimony of Officer Murphy, we note that the conduct of the trial, especially the decision of when to object to evidence, is a matter of trial strategy. Failure to object even to improper testimony does not establish lack of competent representation. (*People v. Grant* (1976), 38 Ill. App. 3d 62, 70, 347 N.E.2d 244.) Additionally, the record indicates that rather than objecting to Murphy's testimony, defense counsel sought to establish on cross-examination of him that the area around Oakland School had a high crime rate, and presumably, that someone else had shot Lustro. While this strategy was apparently unconvincing to the jury, we are not in a position to reverse the conviction because of its failure.

We have reviewed the entire record and can only conclude that the conduct of the defense was not of a level of farce or sham so as to require this court to reverse defendant's convictions for retrial.

## V

■■ Defendant argues that the judgment and sentence for attempt murder must be vacated, as they are based upon the same act which serves as the basis for the judgment and sentence for armed violence.

Our supreme court, in a decision issued during the pendency of this appeal, has stated that when a charge of armed violence and attempt murder relate to the same criminal incident, a judgment of conviction can be entered on only one charge in order to comply with *People v. King* (1977), 66 Ill. 2d 551, 566, 363 N.E.2d 838, *cert. denied* (1977), 434 U.S. 894, 54 L. Ed. 2d 181, 98 S. Ct. 273. See *People ex rel. Carey v. Scotillo* (1981), 84 Ill. 2d 170, 176-77.) This court and others have addressed the question of which conviction cannot stand, and have ruled that the attempt murder judgment must be vacated when an armed violence conviction is based upon the same criminal act. (*People v. Cazares* (1980), 86 Ill. App. 3d 612, 616 n.2, 408 N.E.2d 258; *People v. Myers* (1980), 83 Ill. App. 3d 1073, 1077, 404 N.E.2d 1082; *People v. Howard* (1979), 78 Ill. App. 3d 858, 862-63, 397 N.E.2d 877.) We therefore vacate the judgment and sentence entered on the charge of attempt murder.

For the reasons set forth, defendant's conviction and sentence for armed violence are affirmed, and the conviction and sentence for attempt murder are vacated.

Affirmed in part; vacated in part.

STAMOS and PERLIN, JJ., concur.