THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. GEORGE CHARLES McCLELLAN, Defendant-Appellant.

Fourth District   No. 4—90—0816

Opinion filed July 25, 1991.

Daniel D. Yuhas and Lawrence J. Essig, both of State Appellate Defender's Office, of Springfield, for appellant.

Charles G. Reynard, State's Attorney, of Bloomington (Kenneth R. Boyle, Robert J. Biderman and Elliott Turpin, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE McCULLOUGH delivered the opinion of the court:

Following a jury trial, defendant George McClellan was convicted of the offense of criminal sexual assault (Ill. Rev. Stat. 1989, ch. 38, par. 12—13(a)(1)). Defendant was sentenced to a term of eight years'

imprisonment with credit for time served, and appeals the conviction and sentence imposed. Defendant alleges the trial court improperly permitted (1) reference to the fact that defendant took a polygraph examination, (2) a police officer's opinion testimony that the officer believed defendant forced complainant to engage in an act of sexual intercourse, and (3) certain aggravating factors in determining defendant's sentence. We reverse and remand.

Defendant was charged with one count of aggravated criminal sexual assault, alleging defendant committed an act of sexual penetration with complainant by the use of force. The State presented three witnesses: (1) complainant, (2) Sergeant Gregory Fillmore, and (3) Ellen Schroeder, a polygraph examiner.

At the time of trial, complainant testified she was 26 years old. On the afternoon of May 22, 1987, she and a friend went to defendant's apartment to visit. Complainant testified she had known defendant a number of years, that they were friends, and they had had sexual intercourse about four times in the middle of 1986. After some small talk, complainant and her friend left on foot. About five blocks from complainant's apartment, complainant and her friend parted company. At this point, complainant testified it began to rain. Defendant pulled up in his car, and asked her if she wanted a ride. She testified she initially said no, but when defendant urged her to accept a ride, she agreed. Complainant stated that defendant eventually drove her to an abandoned farmhouse where he began fondling her, and eventually forced her to engage in an act of sexual intercourse.

Afterward, defendant asked complainant if there were any hard feelings, or if she was mad at him, and she gave no response. She testified she told him "Just please take me home." Defendant then drove complainant home. Complainant went to the hospital and underwent a physical examination, a pap smear, and a urinalysis.

Sergeant Gregory Fillmore, of the McLean County sheriff's department, testified that on May 27, 1987, he and Detective Bailey spoke with complainant and some of the doctors and nurses treating her at St. Joseph's Hospital. Fillmore testified that complainant told him where the sexual assault occurred, and that she knew the perpetrator. After complainant was finished at the hospital, Fillmore and Bailey drove her into the country and found the deserted house where complainant stated the sexual assault occurred.

Fillmore testified he and Bailey then spoke with defendant. Fillmore testified defendant told him that he had spotted complainant walking down Grove Street, and that he and complainant went for a

drive. Defendant denied stopping the vehicle at any time, stopping at a farmhouse, or engaging in sexual intercourse with complainant.

Ellen Schroeder testified that she interviewed defendant about the sexual assault. Initially, defendant denied taking complainant to an abandoned farmhouse, and denied having sexual intercourse with her. She testified that later defendant did admit he drove out to a farmhouse and had intercourse with complainant, but denied any force was used. As agreed by the parties, no mention was made during Schroeder's testimony that she conducted a polygraph examination of defendant, but only that she had "interviewed" him.

Defendant testified that on the day in question, while driving his car after complainant and her friend left his apartment, he saw complainant walking and offered her a ride, which she accepted. Defendant testified they stopped at an old abandoned farmhouse, and that he asked her if she wanted to go in and see the inside. Complainant did not respond, but she got out of the car and they went into the house. Defendant testified they engaged in an act of sexual intercourse at the farmhouse, but he claimed complainant consented.

Defendant admitted on direct examination that he lied in the interview with Ellen Schroeder (the polygraph examiner) by denying that he had engaged in sexual intercourse with complainant. He explained that he denied his actions because he was afraid his girlfriend would find out he had sex with complainant. He stated that later in that interview he admitted to having intercourse with complainant because his girlfriend already knew about the sexual activity, and it needed to be "cleared up with the police." On cross-examination, the prosecutor asked why he initially lied to Schroeder if he had already cleared things up with his girlfriend. Defendant did not answer this question. On redirect examination, defense counsel asked defendant why he denied telling Schroeder that he had intercourse with complainant, if he had already talked to his girlfriend. Defendant answered "well, I just—I don't know." Defense counsel asked, "You then realized it was time to tell the truth?" Defendant answered, "Right. It was time to 'fess up to it, that I actually did have sex with [complainant]." A side bar was then held and the prosecutor argued that defense counsel had opened the door about evidence regarding defendant's polygraph examination because he had offered an explanation about why he changed his story to Ellen Schroeder. The court then allowed cross-examination of defendant on his explanation for changing his story to Schroeder:

> "Q. [Prosecutor:] Mr. McClellan, you have now stated that you decided to tell the truth to Ellen Schroeder because you

wanted to get it out in the open, you had previously told your girlfriend Ruth Bond about it ***?

A. [Defendant:] Yes, sir.

Q. [Prosecutor:] *Isn't in fact the truth of the matter that you were hooked up to a lie detector box when Ellen Schroeder was asking you the truthfulness of whether or not you forced intercourse upon [complainant], and she told you that she did not believe you were being truthful.* Isn't that in fact what caused you to come out and tell the truth about what happened?

A. [Defendant:] Yes, sir, I was hooked to a box. I was taking a lie detector test.

Q. [Prosecutor:] And then you told her *** after she first indicated to you that she did not believe you were being truthful, and isn't it at that point that you said that you did take her out to an abandoned farmhouse on that night, and you did have sex with her. Isn't it also at that point that you did not—didn't you tell her that you did not use any force and you believed that she was a willing participant ***?

A. [Defendant:] I don't know, sir, because that's been— 1987. I believe so.

Q. [Prosecutor:] At that point isn't it again true that *Ellen Schroeder retested you and told you that she still did not believe you were being honest, and isn't it at that point that you told her that [complainant], *** did say no prior to sex, but that she did not fight you off?*

A. [Defendant:] She said no, but she didn't—after I rubbed on her for a while she more or less willingly give in.

Q. [Prosecutor:] Well, the question is, it was after Miss Schroeder told you that you were not being truthful the second time that you told her that [complainant] did say no prior to the sex act but that she did not fight you off, isn't that correct?

A. [Defendant:] Yes, sir." (Emphasis added.)

Immediately after this testimony, the court instructed the jury that the evidence regarding defendant's polygraph examination was introduced only to explain why defendant changed his story, and not to suggest what the polygraph machine showed in response to defendant's answers. The court further instructed the jury that the results of a polygraph exam are inadmissible because of their unreliability.

The jury returned a verdict of guilty. After the sentencing hearing, the trial court imposed a term of eight years' imprisonment. This appeal followed.

■ The results of a polygraph examination, as proof of guilt or innocence, are clearly inadmissible. (*People v. Baynes* (1981), 88 Ill. 2d 225, 240, 430 N.E.2d 1070, 1077.) The results of polygraph examinations are inadmissible because they are not sufficiently reliable as proof of guilt or innocence, yet because of their quasi-scientific appearance, jurors may give them undue weight and believe the results are conclusive. (*People v. Taylor* (1984), 101 Ill. 2d 377, 391-92, 462 N.E.2d 478, 485.) Polygraph evidence is inadmissible in any manner and at any stage of a defendant's criminal trial. *Baynes*, 88 Ill. 2d at 240, 430 N.E.2d at 1077; *Taylor*, 101 Ill. 2d at 391-92, 462 N.E.2d at 485.

In *Baynes*, the result of defendant's polygraph test was introduced pursuant to a stipulation, as substantive evidence of defendant's guilt, and the supreme court found the introduction of this evidence rose to the level of plain error. (*Baynes*, 88 Ill. 2d at 244, 430 N.E.2d at 1079.) In *People v. Yarbrough* (1982), 93 Ill. 2d 421, 429, 444 N.E.2d 493, 497, the trial court requested defendant take a polygraph exam before he ruled on defendant's motion for a new trial, suggesting that if the State felt the results were conclusive, it could then move to vacate the defendant's conviction. The supreme court ruled that the trial court was precluded from considering the results of the polygraph test in deciding a motion for a new trial. In *Taylor*, the supreme court reversed defendant's conviction where the trial court refused the defendant's request for a change of venue because of excessive pretrial publicity, including the fact that potential jurors heard on the radio that a codefendant was released after he passed a lie detector test. The supreme court reasoned that potential jurors could infer that since defendant was not released he had failed the polygraph test, and therefore must be guilty. *Taylor*, 101 Ill. 2d at 388, 462 N.E.2d at 483.

The State acknowledges that the results of polygraph examinations are inadmissible. However, the State claims it did not introduce the *results* of the test, but rather with the fact that defendant changed his story after the interviewer told him she did not believe defendant, and not because he wanted the truth "out in the open." Thus, the State argues the reference to defendant's polygraph examination was permissible because it was introduced not to show guilt, but for the limited purpose of rebutting defendant's explanation of why he changed his story. The State further argues defendant invited this reference by his testimony on direct examination about why he initially lied to Schroeder, and the court clearly instructed the jury

that the evidence was only introduced to explain why defendant changed his story and to judge his credibility.

■ While the results of defendant's polygraph examination were not expressly mentioned, the prosecutor referred to the fact that Schroeder did not believe defendant after administering a polygraph examination, and again after retesting him. The inescapable inference is that defendant failed the polygraph test, and we conclude that this line of questioning resulted in reversible error.

Our supreme court has made it abundantly clear, through its trilogy of *Baynes, Yarbrough,* and *Taylor,* that polygraph evidence is strictly inadmissible, and its admission is so prejudicial as to require reversal. That the State injected the polygraph reference for a limited purpose (to explain why defendant changed his story) is of no significance. All the negative and prejudicial inferences flowing from the mention that defendant took a polygraph exam remained. The State strenuously argues that defendant opened the door to the polygraph reference by claiming that he changed his story because he wanted to clear things up with the police. However, the prosecutor could have rebutted defendant's assertion without ever referring to defendant's polygraph examination, by stating that defendant changed his story only after Schroeder told him she did not believe him. In addition, exclusion of polygraph evidence in this case is required not only to prevent unfair prejudice to the defendant, but also to protect the integrity of the judicial process. *Baynes,* 88 Ill. 2d at 244, 430 N.E.2d at 1079.

Finally, although the trial court instructed the jury of the limited purpose for which the polygraph evidence was introduced, and warned the jury of the polygraph's unreliability, it is unlikely the "jury would follow limiting instructions because the polygraph evidence '*** is likely to be shrouded with an aura of near infallibility, akin to the ancient oracle of Delphi. ***.' " *Baynes,* 88 Ill. 2d at 244, 430 N.E.2d at 1079, quoting *State v. Dean* (1981), 103 Wis. 2d 228, 277, 307 N.W.2d 628, 652.

The State cites *People v. Jackson* (1990), 198 Ill. App. 3d 831, 556 N.E.2d 619, *appeal denied* (1990), 133 Ill. 2d 565, 561 N.E.2d 700, in support of its argument that the polygraph evidence in this case is admissible. In *Jackson,* the defendant testified that his confession was coerced by threats of physical violence. In rebuttal to defendant's assertion, the State introduced testimony that defendant confessed after he was told he had failed a polygraph examination. The court gave the jury a limiting instruction, stating that it should not use the testimony about the polygraph examination as evidence that defendant

lied, but only to determine whether the confession was voluntarily given. (*Jackson*, 198 Ill. App. 3d at 845, 556 N.E.2d at 628.) The court upheld the use of the polygraph evidence with this limiting instruction, stating, "We believe that the evidence showing that the defendant failed the polygraph examination was admissible for the limited purpose of showing that it was his failure to pass the test, rather than the alleged threats of violence by the police, which motivated the defendant to confess." (*Jackson*, 198 Ill. App. 3d at 846, 556 N.E.2d at 629.) Initially, we find *Jackson* distinguishable because there polygraph evidence was introduced on the issue of voluntariness of a defendant's confession, and here it was ostensibly introduced to explain why defendant changed his story. However, because of the damage inherent in the admission of unreliable polygraph evidence, and the futility of a limiting instruction, we decline to follow *Jackson*.

Defendant next argues that the trial court improperly permitted Sergeant Fillmore to testify as to his opinion that defendant used force to compel complainant to engage in sexual intercourse. Whether defendant used force was a question of fact for the jury and an essential element of the offense of criminal sexual assault. (Ill. Rev. Stat. 1989, ch. 38, par. 12—13(a)(1).) Since defendant admitted to engaging in intercourse with complainant, the only remaining question for the jury was whether he used force.

Sergeant Fillmore interviewed defendant on the night of the incident. Fillmore testified that defendant repeatedly denied going out to the farmhouse, or engaging in any sexual contact with complainant. At this point, Fillmore explained his interview technique:

> "[Sergeant Fillmore:] *** I asked him whether he had had any type of sexual contact with [complainant]. Absolutely not. At this time I began to use a theme that a lot of investigators use when you're investigating a case like this. My knowledge or my belief at that point was that he had forced her to have sex with him."

Over defense counsel's objection, Fillmore continued:

> "[Sergeant Fillmore:] It was my belief at that time from the information that I had that this had been a forced sex type situation."

A lay witness is permitted to testify only as to statements of fact about which the witness has personal knowledge. (*People v. Brown* (1990), 200 Ill. App. 3d 566, 578, 558 N.E.2d 309, 316.) Opinion testimony from a lay witness is especially improper and prejudicial when it goes to an ultimate question of fact to be decided by the jury. (*Brown*, 200 Ill. App. 3d at 579, 558 N.E.2d at 317.) Here, whether

defendant used force was the only question for the jury to decide, and Fillmore's opinion on this was improperly introduced as evidence.

■■ In light of our decision to reverse defendant's conviction because of the improper introduction of the polygraph evidence, we need not address defendant's arguments regarding his sentence. We note, however, that we have reviewed the record and find the admissible evidence was sufficient to permit the finder of fact to conclude that defendant was proved guilty beyond a reasonable doubt. Thus, double jeopardy does not bar his retrial, although our holding in no way implies that we have made a finding as to defendant's guilt that would be binding on the court on retrial. *People v. Taylor* (1979), 76 Ill. 2d 289, 309-10, 391 N.E.2d 366, 375.

Accordingly, for the reasons herein stated the judgment of the circuit court of McLean County is reversed and the cause remanded.

Reversed and remanded.

LUND, P.J., and SPITZ, J., concur.