THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. LAFAYETTE CRUMP, Defendant-Appellant.

Third District No. 3—99—0675

Opinion filed March 13, 2001.

Elaine Spiliopoulos, of State Appellate Defender's Office, of Ottawa, for appellant.

Marshall E. Douglas, State's Attorney, of Rock Island (John X. Breslin and Dawn D. Duffy, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE HOLDRIDGE delivered the opinion of the court:

The defendant, Lafayette Crump, was charged with two counts of domestic battery. 720 ILCS 5/12—3.2(a)(1) (West Supp. 1999). After a jury trial, he was found guilty on one of the counts. He was sentenced to an extended term of four years' imprisonment. On appeal, the defendant argues that the trial court abused its discretion by (1) admitting in evidence the investigating police officer's statement that he believed the defendant committed the offense, (2) admitting a hearsay statement in evidence as a spontaneous declaration, (3) answering one of the jury's questions with its own instruction, and (4) sentencing the defendant to an extended term of four years' imprisonment. We reverse and remand for a new trial.

## I. BACKGROUND

The events in question took place in Rock Island, Illinois, on May 30, 1999. The defendant and his girlfriend, Chandra Lewis, argued at Gloria Gibson's house during a Memorial Day barbeque. During the argument, Lewis attacked the defendant with a kitchen knife. Several people at Gibson's house attempted to restrain Lewis' arm. During the struggle, the defendant was cut on the left wrist by the knife. Gibson told the defendant that she was going to call the police. The defendant walked out of Gibson's house.

Gibson's mother, Mary Marbry, lived across the street from Gibson. At trial, Marbry testified that as she was sitting on her front porch, she heard a loud commotion coming from her daughter's house. She saw the defendant walking from behind Gibson's house. Gibson and Lewis were following the defendant, yelling at him.

The defendant crossed the street and got into his car. Marbry testified that Lewis continued to follow the defendant, yelling and screaming. The defendant testified that Lewis pulled a beer bottle from her pocket and attempted to hit the back window of his car.

He exited the car and pursued Lewis back toward Gibson's house. Marbry testified that she saw the defendant push Lewis from behind causing her to fall on the sidewalk. Lewis testified that all she remembered was that the defendant made contact with her as they were running and they both fell. The defendant testified that he tripped on Lewis' feet causing both Lewis and the defendant to fall. The defendant then walked to his car and drove away.

Marbry testified that her granddaughter (presumably Gibson's daughter) called the police. Marbry ran across the street and helped Lewis into Gibson's house. Marbry could smell alcohol on Lewis. Marbry testified that Lewis had abrasions on her elbows, knees, and chest.

Rock Island police officer Jeff Collins responded to a call that a man and woman were fighting with a butcher knife at Gibson's address. Because the call concerned a knife fight, the officer arrived at Gibson's house within a minute of the call.

Collins testified that upon his arrival, he entered Gibson's house and attempted to find Lewis. Collins said that Lewis came out of a bathroom covered in dirt. Her elbows and knees were bloody. He testified that her left cheek was red with what appeared to be a hand print. He described Lewis as hysterical.

At trial, Collins testified that without being questioned by him, Lewis immediately said, "You gotta get him. He just beat my ass." He testified that he asked her who did it.

After the officer asked Lewis to calm down, she said the defendant had done it. He asked her where it had occurred. Collins and Lewis walked out the back door, where she told him that the defendant hit her twice on the face. She said that she ran in the house, the defendant kicked in the door, she ran outside, and the defendant pushed or struck her from behind. She did not know how it happened, but the defendant made contact with her and she fell.

During the trial, the following exchange took place among the prosecutor, Collins, defense counsel, and the judge.

"Q. Through the course of your investigation, Officer, did you have reason to believe that the defendant in this case committed this offense?

A. Yes, I did.

MR. HOFFMAN [defense counsel]: Objection.

THE COURT: What's the point of that? Where are you going?

MR. TERRONEZ [prosecutor]: Just to lay foundation for what happened.

MR. HOFFMAN: I don't care what he believes, Your Honor. I object to him giving his opinion. It's for a jury, not him.

THE COURT: OK, I think the purport of this is not that he's the finder of fact. You're the finder of fact. I think he's trying to show why the policeman did what he did next. If he's not doing that, then it's inadmissible.

Q. (BY MR. TERRONEZ) Was there—was Mr. Crump, the defendant, in the area at that time?

A. No, he wasn't.

Q. And did you put out an attempt to locate him?

A. I put out a probable cause pickup for his arrest.

MR. TERRONEZ: I have no further questions, then.

THE COURT: Cross."

Officer Donald Schaver testified that he pulled the defendant's car over after hearing the probable cause call. He took the defendant into custody and later took him to a hospital. Collins testified that he later heard from Schaver that the defendant's wrist wound might have been up to three inches long and was closed with two staples.

The defendant was charged with two counts of domestic battery. 720 ILCS 5/12—3.2(a)(1) (West Supp. 1999). Count I alleged that he punched Lewis about the face with his hands and fists. Count II alleged that he shoved Lewis in the back with his hands and caused her to fall. The jury found the defendant not guilty of count I but guilty of count II. The judge sentenced the defendant to four years' imprisonment with one year of mandatory supervised release. The defendant appealed.

## STANDARD OF REVIEW

■ Reviewing courts consider evidentiary rulings to determine whether an abuse of discretion occurred. *People v. Hall*, 314 Ill. App. 3d 688, 732 N.E.2d 742 (2000).

## ANALYSIS

### Whether the Trial Court Abused Its Discretion by Admitting in Evidence Officer Collins' Opinion Testimony.

■ At trial, Collins answered affirmatively in response to the prosecutor's question concerning whether, during the course of the investigation, he had reason to believe that the defendant committed the offense. The defendant argues that Collins' statement was inadmissible hearsay. Hearsay is an out-of-court statement offered to establish the truth of the matter asserted. *People v. Nyberg*, 275 Ill. App. 3d 570, 656 N.E.2d 65 (1995). Collins' testimony concerned his out-of-court "reason to believe that the defendant committed the offense" rather than an out-of-court statement. Therefore, Collins' testimony concerning the reason for his belief was not hearsay.

The Random House Dictionary of the English Language defines the noun "reason" as "a basis or cause, as for some belief." Random House Dictionary of the English Language 1608 (2d ed. 1987). Random House defines "belief" as "something believed; an opinion or conviction." Random House Dictionary of the English Language 190 (2d ed. 1987). Black's Law Dictionary defines "opinion evidence" as "[a] witness's belief, thought, or inference about a disputed fact." Black's Law Dictionary 579 (7th ed. 1999). Clearly, a belief is synonymous with an opinion.

At trial, defense counsel objected that Collins' testimony was inadmissible as improper opinion testimony that was a matter for the jury. The proper issues then are (1) whether Collins' testimony was inadmissible opinion testimony, and if so, (2) whether the opinion testimony was prejudicial to the defendant's case and, thus, reversible error.

■ A lay witness may not express an opinion or draw inferences from the facts. *People v. Stokes*, 95 Ill. App. 3d 62, 419 N.E.2d 1181 (1981). As a general rule, a witness' opinion is not admissible in evidence because testimony must be confined to statements of fact of which the witness has personal knowledge. *People v. Sprinkle*, 74 Ill. App. 3d 456, 393 N.E.2d 94 (1979).

There are exceptions, however, to this general rule. *Sprinkle*, 74 Ill. App. 3d 456, 393 N.E.2d 94. Lay witnesses may express opinions on questions of intoxication based on their personal observation and experience. *People v. Beller*, 45 Ill. App. 3d 816, 360 N.E.2d 130 (1977). Improper opinion testimony is not necessarily prejudicial where the conclusion or testimony adduced is an obvious one. *People v. Sepka*, 51 Ill. App. 3d 244, 367 N.E.2d 138 (1977). A lay witness may express an opinion based upon his or her observations where it is difficult to reproduce for the jury the totality of the conditions perceived and where the opinion given is one that persons in general are capable of making and understanding. *Stokes*, 95 Ill. App. 3d 62, 419 N.E.2d 1181.

■ Lay witness testimony is especially improper and prejudicial when it goes to the ultimate question of fact that is to be decided by the jury. *People v. McClellan*, 216 Ill. App. 3d 1007, 576 N.E.2d 481 (1991). A police officer is a figure of authority whose testimony may be prejudicial if the officer informs the jurors that they should believe a portion of the prosecution's case. *Sepka*, 51 Ill. App. 3d 244, 367 N.E.2d 138.

■ In the instant case, the record reflects that Officer Collins was not qualified by the prosecution as an expert witness. Therefore, he was a lay witness.

■ The prosecutor's question to Collins did not concern facts about which the officer had personal knowledge. When the prosecutor asked Officer Collins whether, at any point during the investigation, he had reason to believe that the defendant committed the offense, the prosecutor was asking about the basis of the officer's past belief. It is immaterial whether the prosecutor was asking the officer about the basis of his current belief or the basis of his past belief. The prosecutor's question called for Collins to state the basis of his belief about the ultimate disputed fact in the case, *i.e.*, whether the defendant committed the offense. Therefore, the prosecutor's question asking Officer Collins for the basis of his belief called for opinion testimony from the officer.

The State agrees that Collins' testimony was not hearsay because Collins did not relate an out-of-court statement during this testimony. The State, however, then cites a statutory exception to the hearsay rule as justification for the judge to admit Collins' statement. The statute that the State relies upon says that a statement is not rendered inadmissible by the hearsay rule if (a) the declarant testifies at the trial, (b) the declarant is subject to cross-examination concerning the statement, and (c) the statement is one of identification of a person made after perceiving him. 725 ILCS 5/115—12 (West 1998).

First, this statute, which is an exception to the hearsay rule, cannot be a justification for the judge to admit Collins' statement to explain why the officer did what he did next because, as the State admits, Collins' statement was not hearsay. An exception to the hearsay rule cannot be the justification for admission of testimony that is not hearsay. Second, even if Collins' statement had been hearsay, the statement did not concern identification of a person. Therefore, this evidentiary statute is not a justification for the judge's ruling that Collins' statement was admissible.

In response to the defendant's objection that Collins' statement was opinion testimony, the judge merely told the jury that the police officer was not the trier of fact but, rather, that the jury was the trier of fact. The judge did not properly admonish the jury that it was to disregard the officer's past belief that the defendant committed the offense. The judge allowed Collins' testimony to come in if it was "to show why the policeman did what he did next."

As discussed above, a hearsay statement may be admitted in evidence to show why a police officer did what he or she did next if the statement concerns identification of a person made after perceiving him. This court, however, has not identified any exception permitting lay opinion testimony to be admitted in evidence to show why a police officer did what he or she did next. Collins' testimony does not fall

within any of the exceptions this court has discovered that permit lay opinion testimony to be admitted in evidence. Therefore, the judge's admonition to the jury that Collins' opinion testimony was admissible "to show why the policeman did what he did next" was an improper admonition.

At trial, the prosecutor argued that his question about the officer's belief was necessary to lay a foundation for what the officer did next. This is not true. In order to establish that the officer put out a probable cause radio call, it was not necessary for the prosecutor to elicit testimony from Collins that the officer believed the defendant committed the offense. Under *Stokes* and *Sprinkle*, proper foundational questions would have concerned matters within the scope of the officer's personal knowledge such as whether the defendant was in the area, and if not, who arrested the defendant and how that arrest came about. The officer then could have stated that he put out a probable cause call on the radio without the necessity of expressing his belief that the defendant committed the offense.

Under *McClellan*, whether the defendant committed the offense was the ultimate question of fact to be decided by the jury. According to *Sepka*, the officer's statement was especially prejudicial because, as an authority figure, he was informing the jury that it should believe a portion of the prosecution's case. We hold, therefore, that the trial judge abused his discretion by admitting in evidence the officer's statement that he believed the defendant committed the offense.

Accordingly, we reverse and remand the case for a new trial. Because the case is reversed and remanded based on the admission of Collins' improper opinion testimony in evidence, we do not reach the other issues raised by the defendant on appeal.

## CONCLUSION

For the foregoing reasons, we reverse and remand to the Rock Island County circuit court for a new trial.

Reversed and remanded.

SLATER, J., concurs.

PRESIDING JUSTICE HOMER, dissenting:

The majority holds that Officer Collins' testimony—that he had reason to believe the defendant committed the offense—was improperly admitted as "opinion testimony." The fallacy in the majority's analysis is twofold.

First, the majority fails to properly take into account the

admonishment given by the trial court immediately following the testimony. The court instructed the jury that Officer Collins' testimony was only relevant to show why he did what he did during his investigation. Otherwise, the court informed the jury the testimony was inadmissible. Thus, the court gave a proper limiting instruction.

Second, the majority misconstrues the testimony at issue as "opinion testimony." Officer Collins was not asked if the defendant committed the offense. Nor was he asked if he believed the defendant committed the offense. Officer Collins was simply asked whether, in the course of his investigation, he had reason to believe that the defendant committed the offense, in other words, whether the defendant was a suspect in the crime. In this context, I do not think the testimony can be fairly construed as opinion testimony in the first place.

As I find no other grounds in the record for reversing the defendant's conviction, I would affirm it. I would, however, vacate the defendant's sentence as it clearly violates the rule articulated in *Apprendi v. New Jersey*, 530 U.S. 466, 147 L. Ed. 2d 435, 120 S. Ct. 2348 (2000), that any fact that increases the penalty for a crime beyond the prescribed maximum term of imprisonment for that crime must be submitted to a jury and proved beyond a reasonable doubt. *Apprendi*, 530 U.S. at 490, 147 L. Ed. 2d at 455, 120 S. Ct. at 2362-63. Here, the trial court sentenced the defendant to an extended term of four years in violation of *Apprendi*. Accordingly, I would remand this cause for a new sentencing hearing in order that the trial court might impose a sentence within the one- to three-year statutory range for a Class 4 felony.