# Illinois Official Reports

## Appellate Court

---

### *People v. Suggs*, 2021 IL App (2d) 190420

---

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. MEYA SUGGS, Defendant-Appellant. |
| District & No. | Second District<br>No. 2-19-0420 |
| Filed | June 3, 2021 |
| Decision Under Review | Appeal from the Circuit Court of Kane County, No. 18-CM-1546; the Hon. Elizabeth K. Flood, Judge, presiding. |
| Judgment | Reversed and remanded. |
| Counsel on Appeal | James E. Chadd, Thomas A. Lilien, and Amaris Danak, of State Appellate Defender's Office, of Elgin, for appellant.<br><br>Jamie L. Mosser, State's Attorney, of St. Charles (Patrick Delfino, Edward R. Psenicka, and Lynn M. Harrington, of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People. |
| Panel | JUSTICE HUDSON delivered the judgment of the court, with opinion.<br>Justices Hutchinson and Brennan concurred in the judgment and opinion. |

**OPINION**

¶ 1    Following a jury trial in the circuit court of Kane County, defendant, Meya Suggs, was found guilty of a single count of domestic battery (720 ILCS 5/12-3.2(a)(1) (West 2018)) and was sentenced to 12 months' conditional discharge. Defendant argues on appeal that it was error for a police officer to testify to his opinion that a crime had been committed. We agree. Accordingly, we reverse and remand for a new trial.

## I. BACKGROUND

¶ 3    Defendant was charged by complaint with two counts of domestic battery. Count I alleged that defendant "knowingly caused harm to Bertha Vargas, a family member of the defendant, in that said defendant grabbed Bertha by her left wrist and squeezed causing her finger nails [*sic*] to puncture Bertha's wrist in three different places" (*id.*). Count II alleged that defendant "knowingly made contact of an insulting nature with Bertha Vargas, a family member of said defendant, in that said defendant shoved Bertha" (*id.* § 3.2(a)(2)).

¶ 4    At trial, Vargas testified that, on June 17, 2018, she moved to Fremont Street in Elgin. Defendant was Vargas's daughter. Vargas had moved various items from defendant's apartment, including the only functioning air conditioner. Defendant contacted Vargas about retrieving the air conditioner, and Vargas agreed that defendant could come over and take it. When Vargas attempted to take the air conditioner out of the window, it fell into some bushes. Vargas moved it away from the bushes and left it for defendant to pick up. Defendant arrived at about 12:30 a.m., and they began arguing about the air conditioner. Vargas testified that she had been drinking and was intoxicated. At some point during the argument, Vargas slipped and began to fall. Defendant grabbed Vargas's arm. Vargas received scratches from defendant's fingernails. Vargas remembered calling 911. She did so because she was intoxicated and "had a lot of other personal things going on that just upset [her]." Also, because she was intoxicated, she had little recollection of her conversation with the police. However, she was sure she had mentioned that she had been drinking. On cross-examination, Vargas testified that defendant never punched, pushed, or slapped her, and did not reach out and scratch her. On redirect, Vargas testified that she cherished her relationship with defendant and would do whatever she could to make sure that defendant did not get into trouble.

¶ 5    Officer Matthew Miracle of the Elgin Police Department testified that he and his partner responded to the reported incident on Fremont Street. Officer Miracle testified that he noticed an injury on Vargas's left wrist. Officer Miracle was wearing a body camera, which recorded his encounter with Vargas. An edited recording was admitted into evidence and played for the jury. On the recording, Officer Miracle's partner asked Vargas, "Is that cut from her?" Vargas responded, "[Be]cause she grabbed my hand. But it's fine." Vargas told the officers, "She pushed me. She grabbed me, I guess." Vargas also said, "I put my arm up." Vargas told the officers that when she told defendant she was calling the police, defendant called her a "sorry a*** b***" and a "police a*** b***." Vargas never indicated that she had been drinking, and Officer Miracle had no reason to believe that she was under the influence of anything.

¶ 6    During direct examination of Officer Miracle, the following exchange took place:

> "Q. Now, after speaking with [Vargas] *** did you form an opinion that a crime had been committed?

A. Yes.

Q. And in your opinion, what crime had occurred?

A. Domestic battery."

In addition, the prosecutor asked Officer Miracle whether, after speaking to Vargas and observing her injuries, he "believed that something had happened." Officer Miracle indicated that he believed a domestic battery had occurred.

¶ 7 On cross-examination, Officer Miracle testified that, while speaking with Vargas, it became clear that she did not want Officer Miracle to pursue the case. Vargas did not sign the complaint against defendant; Officer Miracle did. On redirect examination, Officer Miracle again testified that, notwithstanding Vargas's apparent wishes, he reached the opinion that a crime had been committed.

¶ 8 The jury found defendant guilty of count I (bodily harm) but not guilty of count II (contact of an insulting nature). As noted, the trial court sentenced defendant to 12 months' conditional discharge. This appeal followed.

¶ 9 II. ANALYSIS

¶ 10 Defendant argues that it was error to permit Officer Miracle to testify to his opinion that a crime occurred. Defendant did not object to the testimony or raise the issue in her posttrial motion. It is well-established that a defendant must take both steps to preserve an error for appellate review. *People v. Enoch*, 122 Ill. 2d 176, 186 (1988). Defendant acknowledges that she forfeited the issue. Nonetheless, she seeks review under the plain-error rule. As our supreme court has recently explained:

> "[U]nder the plain-error doctrine, a reviewing court may consider an unpreserved error if (1) a clear or obvious error occurred and the evidence is so closely balanced that the error alone threatened to tip the scales of justice against the defendant, regardless of the seriousness of the error, or (2) a clear or obvious error occurred and that error is so serious that it affected the fairness of the defendant's trial and challenged the integrity of the judicial process, regardless of the closeness of the evidence." *People v. Birge*, 2021 IL 125644, ¶ 24.

Defendant contends that review is proper here because the evidence was closely balanced. We agree. The jury's decision hinged on whether it chose to credit Vargas's statement to Officer Miracle or her contrary testimony at trial. "When determining whether the evidence is closely balanced, when the only evidence consists of two differing accounts of the same event, with no corroborating evidence, courts often find the credibility contest to be closely balanced." *People v. Williams*, 2020 IL App (3d) 170848, ¶ 21. It makes no difference that here the differing accounts came from the same witness.

¶ 11 The State denies that the evidence was closely balanced. For the most part, however, the State simply recites the evidence favorable to its case and ignores Vargas's contrary trial testimony. Two factors undermine the credibility of Vargas's trial testimony. Notably, Officer Miracle's testimony that Vargas did not appear to be impaired contradicted Vargas's testimony that she had been intoxicated. Also, Vargas's testimony was inconsistent in that she claimed to have an imperfect recollection of her interaction with police, but she recalled fairly clearly her interaction with defendant. In sum, the evidence was still sufficiently close, thus requiring review under the plain-error rule.

¶ 12    Turning to the merits, Illinois Rule of Evidence 701 (eff. Jan. 1, 2011) provides:

> "If the witness is not testifying as an expert, the witness' testimony in the form of opinions or inferences is limited to those opinions or inferences which are (a) rationally based on the perception of the witness, and (b) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue, and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702."

Generally speaking, "[a] lay witness may not express an opinion or draw inferences from the facts." *People v. Crump*, 319 Ill. App. 3d 538, 542 (2001). This is so because "testimony must be confined to statements of fact of which the witness has personal knowledge." *Id.* Opinion testimony by a lay witness is permissible, however, when "based upon his or her observations where it is difficult to reproduce for the jury the totality of the conditions perceived and where the opinion given is one that persons in general are capable of making and understanding." *Id.* In such cases, the testimony will be helpful to the trier of fact. Lay opinion testimony on the ultimate question of fact for the jury is particularly improper and prejudicial. *Id.*

¶ 13    In *Crump*, which defendant relies on in part, the defendant was charged with domestic battery arising from an altercation with his girlfriend. During the defendant's jury trial, the prosecutor asked the officer who responded to the incident, " 'Through the course of your investigation, Officer, did you have reason to believe that the defendant in this case committed this offense?' " *Id.* at 540. The officer responded " 'Yes, I did.' " *Id.* The court concluded that the trial court erred in overruling an objection to the testimony. The court reasoned as follows:

> "The prosecutor's question to [the officer] did not concern facts about which the officer had personal knowledge. When the prosecutor asked [the officer] whether, at any point during the investigation, he had reason to believe that the defendant committed the offense, the prosecutor was asking about the basis of the officer's past belief. It is immaterial whether the prosecutor was asking the officer about the basis of his current belief or the basis of his past belief. The prosecutor's question called for [the officer] to state the basis of his belief about the ultimate disputed fact in the case, *i.e.*, whether the defendant committed the offense. Therefore, the prosecutor's question asking [the officer] for the basis of his belief called for opinion testimony ***." *Id.* at 543.

¶ 14    Although the *Crump* court declined to distinguish between prior opinions and current ones, that distinction was found to be significant in *People v. Degorski*, 2013 IL App (1st) 100580. There, a former assistant state's attorney, McHale, testified about the defendant's interrogation where defendant confessed his role in several murders. The defendant attempted to develop a theory that the confession was tainted because McHale had shown him photographs of the crime scene. The defendant's attorney asked McHale, " '[W]hen you talk about getting a statement that's reliable and truthful, you want a statement that is not contaminated by someone having information from outside; right?' " *Id.* ¶ 73. McHale responded, " 'I suppose that's true, *but his statement to me was reliable.*' " (Emphasis in original.) *Id.* The *Degorski* court concluded that McHale was merely recounting his opinion during the interrogation, not his opinion during the trial. Accordingly, the court concluded that such testimony was not improper. *Id.* ¶¶ 78, 86.

¶ 15    In reaching that conclusion, the *Degorski* court relied, in part, on *People v. Hanson*, 238 Ill. 2d 74 (2010). In *Hanson*, the defendant was charged with the murder of his parents, one of his sisters, and his brother-in-law. Another sister, Jennifer, testified that she told Detective

Michael Nilles that she thought the defendant was responsible for the killings. Nilles testified that, during a telephone conversation with the defendant, he said " 'Jennifer thinks you did this.' " *Id.* at 88. The defendant argued that the testimony was improper opinion testimony. The *Hanson* court disagreed, reasoning as follows:

> "Detective Nilles did not testify that he believed defendant was guilty. Nor did Jennifer testify that she believed defendant was guilty. Rather, both Nilles and Jennifer testified to a statement which indicated, at the time the statement was made, that Jennifer thought defendant had caused the victims' deaths. At no time was any testimony offered as to Jennifer's present opinion of defendant's guilt or innocence. Thus, while defendant may arguably challenge the testimony as to relevance and hearsay concerns, we reject defendant's argument that this testimony constituted improper opinion testimony." *Id.* at 101.

¶ 16 Defendant acknowledges that *Degorski* held that testimony of a past opinion was not improper, although he contends that other factors, which are not present here, contributed to that decision. Defendant further argues that, in any event, the record is not clear that Officer Miracle was testifying about a prior opinion. The State contends that, regardless of whether *Degorski* applies, *Hanson* is directly on point.

¶ 17 The outcome of this appeal hinges on whether we should view Officer Miracle's testimony as a statement of his prior opinion or of an opinion held at the time of trial. We conclude that the latter view is correct. As previously noted, the following exchange occurred during direct examination of Officer Miracle:

> "Q. Now, after speaking with [Vargas] *** did you form an opinion that a crime had been committed?
>
> A. Yes.
>
> Q. And in your opinion, what crime had occurred?
>
> A. Domestic battery."

¶ 18 The first question was framed in the past tense, but it pertained only to when Officer Miracle *formed* his opinion. That Officer Miracle formed the opinion in the past obviously does not mean that he no longer held that opinion. The second question to Officer Miracle was prefaced "And in your opinion." We believe that the jury almost certainly would have understood that language as a reference to an opinion Officer Miracle held when he testified. Officer Miracle's opinion testimony was therefore improper. We note that the State argues that Officer Miracle's testimony "was relevant because it provided context for why [he] pursued charges against defendant when the victim told him that she did not want defendant charged." Not all relevant evidence is admissible, however. Rather, "[a]ll relevant evidence is admissible, *except as otherwise provided by law*." (Emphasis added.) Ill. R. Evid. 402 (eff. Jan. 1, 2011). The rules governing opinion testimony limit the admissibility of such evidence, notwithstanding its relevance, if any.

¶ 19                                                    III. CONCLUSION

¶ 20 For the foregoing reasons, we reverse the judgment of the circuit court of Kane County, and we remand for a new trial.

¶ 21        Reversed and remanded.